468 P.2d 387

STATE COMPENSATION FUND, Insurer of Gila Water Commission (U. S. Department of Justice), Petitioner,

v.

Dorothy G. DUNGAN, Widow AND INDUSTRIAL COMMISSION of Arizona, Respondents,

Gila Water Commission, (U. S. Department of Justice), Respondent.

No. I CA–IC 319.

Court of Appeals of Arizona, Division 1, Department A.

April 23, 1970.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Jr., Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for Industrial Commission of Arizona.

Wilford R. Richardson and Irval L. Mortensen, Safford, for respondent Dungan.

CAMERON, Judge.

This is a writ of certiorari to review the findings and award of the respondent Industrial Commission of Arizona holding that Gerald Knox Dungan died in an accident arising out of and in the course of his employment.[1] From said determination respondent State Compensation Fund appeals to this Court.

We are called upon to determine whether the facts reasonably support the Commission's finding that the deceased was on the job at the time he was killed in an automobile accident.

The facts necessary for a determination of this matter are as follows. The decedent, Gerald Knox Dungan, husband of the respondent Dorothy G. Dungan, was appointed by the United States District Court to enforce the Safford and Duncan Valley Gila Water Decree. Decedent was the Water Commissioner for this area under said decree and it was his duty to see that the water of the Gila River was apportioned to the respective lands as decreed by the court. He maintained an office in Safford and had two assistants, Mr. George E. Greiner and Mr. Alston C. Lewis. The United States Geological Survey maintained recording devices along the Gila River to determine the flow of water and it was the duty of decedent's two assistants to check these recording devices. The information obtained was used in distributing the water under the decree and in giving instructions to the respective ditch bosses on how much water was to be released to the respective canals. In cases of disputes relating to flooding or waste of water, the Commissioner was called upon to act as an arbitrator.

The day before the accident Mr. Dungan had returned from several days absence from the area. The testimony of the wife is as follows:

"Q While you were traveling home, was there any conversation concerning the river or his work?

---

1. This case was decided under the law as it existed prior to 1 January 1969.

"A  Oh, yes, we always discussed it. We were wondering if the river was the same as it was when we left, and what had transpired, you know, while we were gone.

"Q  What I am getting at, did he talk about any specific jobs that he needed to do or things to check?

"A  I can't think of any.  I've been trying to and I can't think.

"Q  There was no such conversation you can recall?

"A  No.  We—I remember, as we crossed the—no, the only thing I remember is that when we crossed the bridge at Bylas, the river seemed to be muddier than usual, and we remarked that we wondered if there might have been water up above, you know, Virden Valley, I mean up at Duncan, up that way, if there might have been a flood or something.

"Q  Was the river muddy or roiled when you crossed it at Safford, going home, if you know?

"A  It was dark.

"Q  You couldn't see?

"A  No, we couldn't see.

"Q  Then, at the time of the accident, you don't really know where Mr. Dungan was going?

"A  No."

The testimony of the witnesses indicates that Mr. Dungan was very conscientious about his job.  He spent most of his time in the office, but that it was his custom when he returned from out-of-town after an absence, to go out on the land and check the River and the canals.

On the morning in question, the deceased left his house.  He did not go to his office, as was his custom, but was killed when his car hit the side of the bridge crossing the Safford-Gila River Bridge.  No one saw the accident.  There was a United States Geological Survey measuring station on the other side of the bridge on which the decedent was killed.

The Commission in an extensive award found:

"2.  The accident occurred during the working hours of the decedent, and at a place where he might properly have been in the performance of his duties.

"3.  There was no evidence that decedent was not engaged in his master's work at the time of his death.

"4.  A presumption has therefore arisen by operation of law that decedent was killed in an accident arising out of and in the course of his employment.

"5.  There has not been sufficient evidence offered to rebut the presumption.

"6.  Decedent died as a result of an automobile accident which occurred in the course of and arising out of his employment."

The State Compensation Fund contends that the facts do not permit an inference that the decedent at the time of the accident was acting in the course of his employment.  Our Supreme Court has stated:

"* * * 'It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, *or where he might properly have been in the performance of his duties during the hours of his work*, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.' * * *."  Martin v. Industrial Commission, 73 Ariz. 401, 404, 242 P.2d 286, 288 (1952).

The evidence is ample that decedent's duties consisted of field work as well as office work, and that one of the functions of his job was to know the amount of water in the River as well as the condition of the River and that he was very conscientious in carrying out his duties with on-the-spot inspections.  A reading of the file

**122**

leads us to the conclusion that the evidence reasonably supports the findings of the Commission.

Award affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.

